UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NAJOLIA                                    CIVIL ACTION

VERSUS                                     NO: 12-821

NORTHROP GRUMMAN SHIP                      SECTION: "J"(2)
SYSTEMS, INC. ET AL

**ORDER AND REASONS**

Before the Court are Plaintiff Frank Najolia, Jr.'s Motion
to Remand (Rec. Doc. 21) and oppositions to same filed by
Defendant General Electric Company (Rec. Doc. 40) and Defendant
CBS Corporation (Rec. Doc. 41).  The motion is set for hearing on
May 23, 2012, on supporting memoranda and without oral argument.
Having considered the motion and legal memoranda, the record, and
the applicable law, the Court now issues its ruling.


**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiff Frank Najolia filed a petition in state court

against numerous defendants[1] alleging that he contracted malignant pleural mesothelioma due to exposure to asbestos. Defendants General Electric Company ("GE") and CBS Corporation ("Westinghouse") (collectively, "Defendants") removed the case to this Court on March 28, 2012.  GE and Westinghouse, in their notice of removal, aver that Najolia's pre-removal deposition revealed that Najolia was a machinist mate in the United States Navy aboard the *USS Uhlmann*, a destroyer vessel.  In his petition, Najolia avers that he was enlisted in the Navy as a mate from 1964 until 1968.  Rec. Doc. 1-1, at 6, ¶ 32.  He alleges that during this time period, he "daily and routinely worked with asbestos-containing products and materials and had occasion to cut, saw, tear, sweep and otherwise manipulate friable asbestos-containing insulation and other products and materials."  Id., ¶ 33.  Najolia asserts that his exposure was in part due to "asbestos fibers released from installation and removal of heat insulation, boiler insulation, insulation pads, pumps, gaskets, boiler lagging, boiler jackets, wellboards and

---

[1] Named as defendants are General Electric Company, CBS Corporation, Eagle, Inc., McCarty Corporation, Reilly-Benton Company, Inc., Hopeman Brothers, Inc., McDermott International Inc., Air & Liquid Systems Corporation, Owens-Illinois, Inc., Bayer CropScience, Uniroyal, Inc., Taylor-Seidenbach, Inc., IMO Industries, Inc., Foster Wheeler, Inc., OneBeacon America Insurance Company, Warren Pumps, LLC, and Huntington Ingalls Incorporated.

2

other asbestos insulation on the boilers, turbines, walls, ceilings, and piping systems" of the naval vessels that were under construction, maintenance, and repair work.  Id., ¶ 34. Defendants removed the case under Title 28 U.S.C. § 1442, the federal officer removal statute.  Plaintiff filed the instant motion to remand.

## THE PARTIES' ARGUMENTS

GE and Westinghouse aver that to the extent Najolia alleges that he was exposed to asbestos associated with their products aboard the *Uhlmann*, the asbestos would have been associated with marine turbines designed and manufactured by them at the direction of the Navy and pursuant to a contract with the Navy to construct the *Uhlmann*, specifically, turbines on the vessel. Accordingly, GE and Westinghouse in their notice of removal assert that removal is proper due to the Court's subject matter jurisdiction under Title 28 U.S.C. § 1442, the federal officer removal statute, because the manufacture and sale of the marine turbines and/or other equipment for the Navy, which Najolia alleges was the source of his asbestos exposure, were performed

under the direction of an officer of the United States.[2]

Najolia argues that GE and Westinghouse's removal was improper because they cannot qualify for federal officer immunity as a matter of law. Najolia argues that GE and Westinghouse have failed to come forward with any competent proof establishing that they acted under a federal officer. He argues that Defendants fail to show that they have a colorable federal defense because they offer no proof that the government provided reasonably precise specifications and that their products conformed to those specifications. Najolia cites the three-part test set forth in Mesa v. California, 489 U.S. 121 (1989) for federal officer removal: (1) the defendant's action under the direction and control of a federal officer, (2) the existence of a colorable federal defense, and (3) a causal nexus between the tortious

---

[2] The statute provides:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

4

conduct that resulted in the plaintiff's injuries and the alleged federal authority.[3]   Najolia purports to apply the test with respect to both (1) a failure-to-warn claim, and (2) a design-defect claim.

As to the first prong, Najolia argues that Defendants have not shown that they were acting under federal direction at the time they allegedly committed the tort.   Najolia asserts that to meet the first prong, the defendant must have acted under an officer's direct orders or pursuant to comprehensive and detailed regulations, which Defendants fail to show.   He argues that Defendants have not presented any evidence that the federal government controlled or restricted their ability to warn employees of the dangers associated with asbestos or required Defendants to use asbestos in the design and manufacture of their products.

Concerning the second prong, Najolia argues that Defendants have no colorable federal defense, namely, the government contractor immunity that they assert.   First, Najolia argues that the government contractor defense must be predicated upon a federal interest and a conflict between duties imposed by state law and duties imposed by federal authority.   Najolia argues that

---

[3] See Rec. Doc. 21-1, at 3 (citing <u>Mesa</u>, 489 U.S. at 124-25).

Defendants have not satisfied this initial burden of proving a conflict between their duties under state products liability law and their federal duty under their contracts with the Navy. Specifically, Najolia argues that Defendants have not shown that the Navy imposed a duty that prohibited them from providing appropriate safety warnings as required by state law, or that the Navy required Defendants to use asbestos in their products. Second, with respect to proving a colorable defense of government contractor immunity, Najolia argues that Defendants cannot meet the requirements of the three-part test set forth in Boyle v. United Technologies Corp., 487 U.S. 500 (1988) for invoking such immunity.[4]  Defendants cannot, Najolia argues, meet the Boyle test because there is no evidence that the Navy exercised its discretion regarding the type and content of warnings that could be placed on the products containing asbestos, or that the Navy imposed design specifications that included asbestos.

Finally, regarding the third prong for federal officer removal, Najolia argues that Defendants have not shown a nexus between the federal government's control and Najolia's legal

---

[4] Under the Boyle test as described by Najolia, a defendant must show that (1) the United States approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.  Rec. Doc. 21-1, at 10 (citing Boyle, 487 U.S. at 512).

theories of recovery.  He asserts that this third prong to some extent collapses into the first:  a causal nexus is predicated upon the existence of federal authority.  Here, he argues, the third prong is not established where no federal officer attempted to restrict or control the warnings that Defendants provided concerning asbestos.  Accordingly, Najolia requests that the Court remand his case to state court because of improper removal based on the federal officer removal statute.

GE and Westinghouse submitted separate opposition memoranda, in each of which Defendants argue that the Court has subject matter jurisdiction and that they properly removed the case under the federal officer removal statute.[5]  As an initial matter, Defendants state that they were not required to submit evidence at the time of removal, but that they now carry their burden by supplementing the record in opposition to Najolia's motion to remand.  Defendants aver that the relevant conduct was their manufacture of propulsion turbines and auxiliary turbines in accordance with military specifications for building the *USS Uhlmann*.  They argue that this case presents the quintessential "government contractor" scenario, and that they have a statutory

---

[5] The memoranda are largely similar and certain portions are even identical.  They differ in terms of the evidence, affidavits and otherwise, submitted and cited in conjunction with each memorandum.

right to have a federal court decide whether the immunity
applies.

Defendants argue that the Court has jurisdiction over both
the design-defect and failure-to-warn claims.  First, as to the
design-defect claim, they argue that the three-prong statutory
test is met.  They argue that as to the first prong, they acted
under the Navy's direction in designing and manufacturing
turbines, in that the Navy directly and in great detail
controlled the design and manufacture of the turbines.
Concerning the second prong, they argue that they state a
colorable government contractor immunity defense, in that
military equipment design is a discretionary governmental
function and there is significant conflict between the Navy's
requirement of the use of asbestos in turbines and Najolia's
effort to impose tort liability on Defendants due to their use of
asbestos.  With respect to the third prong, Defendants argue that
a causal nexus exists, in that the design-defect claim arises
solely from their performance of their contractual duties to the
Navy.

Second, Defendants argue that the failure-to-warn claim
provides independent grounds for removal.  They argue that even
where a specific warning is not expressly preempted by government

specifications, the government contractor defense may still be applicable where the government was involved in the decision of which warnings, if any, were to be provided.  In this case, they assert that the Navy's direct, ongoing participation in the decision of what warnings to include with GE's and Westinghouse's turbines supports a colorable federal defense.

## LEGAL STANDARD

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction.  See 28 U.S.C. § 1441(a).  A defendant bears the burden of proving by a preponderance of the evidence that jurisdiction exists.  De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995).  The jurisdictional facts supporting removal are examined as of the time of removal.  Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000).  The removal statute should be strictly construed in favor of remand. Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).  Although a defendant faced with a motion to remand bears the burden of establishing the existence of federal jurisdiction, because the right of removal under the federal officer statute permits a federal court to determine the validity

9

of an asserted official immunity defense, the "color of federal office" requirement should be afforded a broad reading.   Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397-98 (5th Cir. 1998).   The Supreme Court has cautioned against a narrow reading of the federal officer removal statute:

> The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).

Willingham v. Morgan, 395 U.S. 402, 407 (1969).

## DISCUSSION

The federal officer removal statute permits a defendant to remove a civil action filed in state court to federal court where the action is against or directed to the federal government, an agency thereof, or any federal officer or person acting under that officer for or relating to any act under color of such office.   28 U.S.C. § 1442(a)(1).   This removal statute is an odd one in that it permits removal where the defendant properly invokes a federal *defense*, as opposed to the general rule that a federal question must be evident from the face of the *complaint* for removal to be proper.   Jefferson County, Ala. v. Acker, 527

10

U.S. 423, 431 (1999).  The statute is intended to maintain important principles of federalism and supremacy:  federal officers and agents who act within the scope of their authority should not be prosecuted in a state court for a violation of state law in a way that would leave the federal government powerless to intervene to protect its officers who exercised federal authority.  Willingham, 395 U.S. at 406 (quoting Tennessee v. Davis, 100 U.S. 257, 263 (1880)).  To remove a case based on the statute, the removing defendants must (1) be persons (2) who acted under color of federal authority when they committed the acts that led to the plaintiff's injuries, and (3) must have a colorable federal defense.  Winters, 149 F.3d at 397 (approving and applying district court's test).

The first prong is satisfied:  Westinghouse and GE are "persons" within the meaning of the statute.  The Fifth Circuit has found that corporate entities may qualify as such persons. Winters, 149 F.3d at 398; see also Dupre v. Todd Shipyards Corp., No. 11-2097, 2011 WL 4551439, at *5 (E.D. La. Sept. 29, 2011) (finding that CBS Corporation and General Electric Company are incorporated businesses and thus "persons" under § 1442(a)(1)). The parties do not dispute that Defendants are "persons." Rather, they cite case law which effectively expands the second

and third prongs into a separate three-prong test:  (1) action by the defendant under the direction of a federal officer, (2) existence of a colorable federal defense to the plaintiff's claims, and (3) a causal nexus between plaintiff's claims and acts it performed under color of federal office. See Crocker v. Borden, Inc., 852 F. Supp. 1322, 1325 (E.D. La. 1994).  Before applying this separate three-part test to this case, the Court notes the existence of jurisprudence in this district similar to the litigation at bar.

Another section of this Court has had occasion twice within the past year to render decisions concerning the federal officer removal statute in the context of Navy specifications regarding asbestos.  In Francis v. Union Carbide Corp., No. 11-2695, 2011 WL 6180061 (E.D. La. Dec. 13, 2011), the Court granted the plaintiff's motion to remand where plaintiff alleged that he contracted malignant mesothelioma as a result of secondary exposure to asbestos originating with the defendant's shipyard facility where Navy ships were built.  Id. at *1, 4.  The defendant removed the case, alleging that at the time of the alleged failure to warn of asbestos hazards, it was acting under the direction and control of the Navy as a wartime government contractor.  Id. at *2.  The Court noted that the case was not

one involving design-defect claims, but rather a claim based on an alleged failure to provide a safe working environment and a failure to warn.  Id. at *3.  The Court found that the defendant had not shown that the government's control directly interfered with the defendant's ability to fulfill its state law duty to warn.  Id.  Although the defendant cited to vessel construction contracts requiring it not to depart from plans developed by the government, the Court found that nothing about the government supervision prevented the defendant from warning the plaintiff's father about the dangers of asbestos, and thus there was no causal connection between the failure to warn and defendant's acts under the direction of the Navy or a marine commission.  Id. at *4.

     To be contrasted is the decision in Dupre, 2011 WL 4551439, in which the same section of this Court denied a motion to remand filed by a plaintiff suing for mesothelioma allegedly contracted due to asbestos exposure.  A key difference from the facts of Francis was that the plaintiff in Dupre alleged not only the failure to warn, but also that the asbestos-containing products were defective in design.  Id. at *1.  The removing defendants in Dupre asserted that at the time of the allegedly tortious activities they had acted under the control and direction of the

13

Navy as government contractors.  Id. at *2.  Defendants had contracted with the Navy to provide parts for ships.  Id. at *6. The Court found that the evidence indicated that "the Navy maintained strict control over the design, manufacture, and warnings associated with the asbestos-containing products at issue."  Id.  Federal interests were strongly implicated because the Navy had issued detailed and direct orders for the supply of products, and the ability of the federal government to order and obtain military equipment at a reasonable cost is a federal concern.  Id.  The Court held that a causal nexus existed between the defendants' actions taken under color of federal office and the plaintiffs' claims, and there was a sufficiently colorable defense that permitted removal under the federal officer removal statute.  Id. at *6-7.  Notably, the instant case is more like Dupre than Francis, in that Defendants have submitted evidence of the Navy's detailed specifications for the products manufactured and evidence of the Navy's intimate involvement with the determination of the warnings that could be attached to such products.  Furthermore, Dupre involved the same Defendants as this case and involved related turbine manufacture for the Navy.

1.  *Action Under the Direction of a Federal Officer*

The first element of the federal officer removal statute requires Defendants to prove that they acted under the direction of a federal officer.  <u>Crocker</u>, 852 F. Supp. at 1325.  The requisite showing is more than just action under a federal officer's "general auspices" or within a regulated industry. <u>Overly v. Raybestos-Manhattan</u>, No. C-96-2853 SI, 1996 WL 532150, at *3 (N.D. Cal. Sept. 9, 1996).  The inquiry has been described as whether the action was performed "pursuant to an officer's direct orders or to comprehensive and detailed regulations." <u>Ryan v. Dow Chem. Co.</u>, 781 F. Supp. 934, 947 (E.D.N.Y. 1992). First of all, as a general matter, Defendants have offered proof of the Navy's intimate involvement with the design and manufacture of the turbines that allegedly contained harmful asbestos.  David Hobson, former employee of GE as the Manager of Navy Customer Service for GE's Navy and Small Steam Turbine Department, states in his declaration that GE's manufacture of Navy turbines was done pursuant to government contracts administered by the Secretary of the Navy.  Rec. Doc. 40-1, at 1, ¶ 1; at 3, ¶ 5; at 4, ¶ 7.  Hobson states that "[n]o aspect of the design, manufacture, and testing of Navy turbines escaped this close control."  <u>Id.</u> at 4, ¶ 7.  The declaration of Navy

15

Rear Admiral Ben Lehman is to the same effect.  Rec. Doc. 40-5, at 2, ¶ 6 ("[T]he Navy had complete control over every aspect of each piece of equipment used on Navy ships.  Military specifications governed every characteristic of this equipment, including the instructions and warnings for equipment.").  These allegations constitute evidence of comprehensive federal involvement and oversight in Defendants' action of manufacture and design of products.  Defendants also submit evidence that more specifically addresses whether direct Navy orders required certain asbestos use and warnings (or lack thereof), with respect to Najolia's design-defect and failure-to-warn claims under state law.

With respect to the design-defect claim, Defendants have submitted evidence indicating that the Navy imposed specific obligations upon them to use asbestos in the manufacture of products pursuant to military contracts.  Former GE manager Hobson asserts that government contracts incorporate pertinent military specifications.  Rec. Doc. 40-1, at 4, ¶ 8.  As part of the construction of a Navy ship, the Navy directs shipbuilders to install thermal insulation materials throughout the vessel.  Id. at 10, ¶ 19.  The nature of those materials was specified by the Navy through military specifications.  Id.  There is record

16

evidence of such specifications for machinery requiring that
asbestos be used in certain products manufactured by Defendants.
The Navy's General Specifications for Machinery include
Subsection S41-1, regarding turbines and propulsion, that
incorporates subsection S39-1 in the context of heat insulation.
Rec. Doc. 40-2, at 2.  Subsection S39-1, entitled "Heat
insulation and lagging for piping and machinery," provides that
"[t]he type and thickness of insulating material used shall
conform to the following requirements for the temperatures
indicated," and then states that the insulation for all of
several ranges of temperatures must contain "85 per cent
magnesia."  Rec. Doc. 40-3, at 5.  Magnesia, 85% insulation was a
pipe covering and block form insulation that contained asbestos
fibers (12 to 18%).  Rec. Doc. 40-4, at 12.  Chapter 39 of the
Bureau of Ships Manual, entitled "Thermal Insulation," required
the application of thermal insulation to turbines, and encouraged
the use of asbestos.  Rec. Doc. 41-4, at 17-18.

    The affidavit of James Gate, a former design manager for
Westinghouse, states that the Navy exercised a high level of
control over Westinghouse's design and manufacture of turbines
intended for installation on Navy vessels.  Rec. Doc. 41-1, at 1-
2, ¶¶ 3,7.  He states that compliance with Navy specifications

17

was directly enforced and that the specifications could not be changed without direct approval by the Navy. Id. at 2, ¶ 7. He also avers that "[m]ilitary specifications affirmatively required the use of asbestos-containing thermal insulation" in relation to turbines and other equipment. Id., ¶ 8. His knowledge derives from personal participation in the Navy's testing and sea trials of Westinghouse's equipment provided to the Navy. Id., ¶ 4. Likewise, the affidavit of Navy Rear Admiral Roger B. Horne constitutes evidence that turbines were required to comply with military specifications, and that failure to comply resulted in rejection of the products by the Navy. Rec. Doc. 41-2, at 7, ¶ 16; at 9, ¶ 21; at 14-15, ¶ 34. Admiral Horne was responsible for the maintenance of ship specifications and for monitoring compliance with the specifications by all contractors of Navy equipment. Id. at 7, ¶ 16. Therefore, his attestation that "[i]t was the Navy, not contract manufacturers, that required the use of asbestos thermal insulation with turbines intended for installation on Navy ships," carries significant weight. Id. at 10, ¶ 25. The Navy insisted on asbestos due to its "optimum heat retention, low weight, fire resistance, resistance to water damage and insect infestation, and cost-efficiency." Id. at 11, ¶ 25.

18

The Court finds that there is sufficient proof that, for removal purposes, and without deciding the merits of the proposed defense, Defendants acted under the direction of the Navy in designing and manufacturing the products at issue.  This is especially true in that the specific products at issue have scarcely been identified in the complaint.  Thus, Defendants carry their burden by submitting evidence that general Navy specifications required contractors in their position to manufacture asbestos-containing ship equipment, failing which the Navy would have rejected the turbines.  This finding is consistent with other cases in this district in which the decision has been to sustain the removal based upon evidence of the Navy's involvement with the design specifications of asbestos-containing products manufactured by the removing defendants.  See Fink v. Todd Shipyards, No. 04-430, 2004 WL 856734 (E.D. La. Apr. 20, 2004) (GE properly removed action based on testimony of David Hobson describing historical practices of GE with regard to steam turbines purchased from GE by the Navy, where decisions regarding turbine specifications constituted a governmental exercise of a discretionary function); Crocker, 852 F. Supp. 1322 (Westinghouse properly removed action based on affidavit of James Gate, which was unrebutted, showing that

Westinghouse acted under the direction of the Navy in the construction of marine turbines).

Defendants argue that not only is the removal proper with respect to the design-defect claim, but also with respect to the failure-to-warn claim, because the Navy was comprehensively involved in the process of deciding what warnings would accompany ship equipment containing hazardous materials.  GE employee Hobson avers that the Navy had precise specifications governing the content of any communication affixed to machinery purchased by the Navy.  Rec. Doc. 40-1, at 11, ¶ 21.  Based on Hobson's experience, GE generally was not permitted to affix any type of warning to a Navy turbine addressing alleged hazards of certain products such as thermal insulation materials.  Id.  Hobson avers that the affixment of such a warning to the turbine would have taken it out of compliance with the specifications and would have resulted in the Navy's rejection of the unit.  Id.  Similar rules applied concerning turbine safety manuals.  Id. at 11-12, ¶¶ 22-23.  Admiral Lehman's statement is to the same effect:  the Navy specified the content of all written materials delivered with each piece of equipment, including turbines.  Rec. Doc. 40-5, at 3, ¶ 7.  Westinghouse design manager Gate's affidavit is also in accord:  based on his experience, the Navy had precise

specifications as to the nature of written materials to be delivered with its turbines.  Rec. Doc. 41-1, at 6, ¶ 32. Likewise, Gate asserts that the Navy's safety manuals include safety information only to the extent of direction by the Navy. Id. at 7, ¶ 32.

Further still, there are other declarations in the record with respect to the Navy's policies regarding warnings on shipboard equipment containing asbestos.  Based on Admiral Lehman's experience, professional training, education, and research, he opines that certain types of warnings, including those associated with asbestos hazards, were not approved by the Navy because of the military's unique interest in performance needs aboard warships.  Rec. Doc. 40-5, at 3-4, ¶ 8.  Lehman posits that, for example, possible warnings could have included recommendations for the use of respiratory protection and for particular repair and maintenance practices.  Id.  However, Lehman testified that a requirement for effective respiratory protection equipment would have required the Navy to furnish equipment it did not have and would have been impractical to use under shipboard conditions.  Id.  Additionally, Dr. Lawrence Stilwell Betts, a retired Navy captain, asserts that the Navy did not want unsolicited and potentially inconsistent warning

21

information from equipment manufacturers about asbestos
insulation because warnings from various sources would inundate
sailors with inconsistent information.  Rec. Doc. 40-8, at 23-24,
¶ 30(f).  Relatedly, "[i]n the heat of battle, there is simply no
time to be interpreting inconsistent hazard labels."  Id. at 22,
¶ 30(c).  Moreover, as Lehman states, a requirement for special
repair and maintenance practices might have required the use of
dust removal equipment that the Navy could not have used under
shipboard conditions.  Rec. Doc. 40-5, at 3-4, ¶ 8.  In short:

> A Navy warship is a highly regulated workspace, subject
> to strict military discipline and chain of command, and
> the Navy — not equipment manufacturers — informed
> sailors of the hazards the Navy deemed significant in
> the special environment of a warship, and did so in a
> manner it deemed appropriate to the ship's mission.

Id.  Lehman concludes his declaration that Navy equipment
suppliers like GE could not simply affix asbestos warnings to
equipment or include similar warnings in manuals because the
supply of such extraneous information not requested by the Navy
would have taken the items and manuals out of compliance with
military specifications and would have resulted in the rejection
of the items and manuals.  Id. at 4, ¶ 9.

The above-described evidence constitutes a showing that Navy
contractors generally could not affix warnings about the hazards
of asbestos to equipment they manufactured for use aboard naval

vessels absent Navy approval.  This is highly probative under the first prong of the federal officer removal statute as proof that Defendants' alleged failure to warn was performed under the direction of the Navy.  On the other hand, what is lacking from the record is evidence that the Navy forbade warning labels as to the specific contracts that led to the manufacture of the specific items containing asbestos that were specifically placed on the *Uhlmann* (on which this specific plaintiff served). Arguably, removal solely based on a failure-to-warn claim may be improper in this context, specifically, where the contractor who built asbestos-containing equipment for the Navy does not submit evidence that the Navy required specific warnings to be imposed in this case, or that the Navy prohibited the contractor from complying with its state law duty to give certain warnings that it could have given in conjunction with the underlying manufacture relevant to this case.[6]  However, even if there is a

_____

[6] See, e.g., Cardaro v. Aerojet Gen. Corp., No. 05-2684, 2010 WL 3488207 (E.D. La. Aug. 27, 2010) (where naval equipment manufacturers were sued only for their failure to warn of hazards, no jurisdiction present where defendant was not specifically prevented from giving adequate warnings and where plaintiffs submitted evidence that the Navy expected manufacturers to supply warnings concerning hazardous substances in military equipment in compliance with state law); Mouton v. Flexitallic, Inc., No. 99-0162, 1999 WL 225438 (E.D. La. Apr. 14, 1999) (where plaintiffs did not argue product liability or defective design, no jurisdiction present because there were no express contractual governmental specifications regarding warnings in the context of asbestos use, and federal governmental direction did not prevent defendants from taking their own safety precautions above the minimum standards incorporated in the federal contracts); Gauthe v. Asbestos Corp., No. 96-2454, 1997 WL 3255 (E.D. La. Jan. 2, 1997) (where there were no design-defect

23

requirement that the Navy have prohibited Defendants from including certain warnings required under state law or that the Navy have expressly required certain warnings to the exclusion of others, that does not change the Court's finding that the "acting under" prong of federal officer removal is satisfied in this case.

This is true for several reasons.  First, even if the failure-to-warn claim does not provide independent grounds for removal, the action is removable for the independent reason that, as the Court has already stated, the "acting under" prong is satisfied as to the design-defect claim.[7]  Second, Admiral Lehman declares that the Navy did not permit asbestos warning labels to be affixed to many of the products at issue, including the

_____

allegations at issue, but only failure-to-apprise claims, failure-to-warn claims, and claims of failure to provide a safe place to work, no jurisdiction present because of absence of evidence that the government restricted or prohibited defendant's ability to notify individuals of presence of asbestos). Contra Faddish v. General Elec. Co., No. 09-70626, 2010 WL 4146108, at *9 (E.D. Pa. Oct. 20, 2010) ("The prevailing view is that an independent contractor does not have to show an express government prohibition on all warnings, but rather, must establish that the government 'exercised its discretion' regarding warnings to be placed on defendant's product.") (citing Oliver v. Oshkosh Truck Corp., 96 F.3d 992 (7th Cir. 1996); In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 630 (2d Cir. 1990); Kerstetter v. Pac. Scientific Co., 210 F.3d 431, 437 (5th Cir. 2000); Tate v. Boeing Helicopters, 140 F.3d 654, 660 (6th Cir. 1998); Butler v. Ingalls Shipping, Inc., 89 F.3d 582, 586 (9th Cir. 1996); Crespo v. Unisys Corp., No. 94-2339, 1996 WL 875565, at *15 (D.N.J. June 21, 1996)).

[7] See National Audubon Soc. v. Dep't of Water & Power of City of Los Angeles, 496 F. Supp. 499, 509 (E.D. Cal. 1980) ("[I]f one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.").

turbines that are the subject of the instant case.  The Court will not require a detailed breakdown of whether the Navy prohibited the affixment of warnings as to individual products manufactured by individual defendants.  Such would go against the spirit of the removal statute because a defendant need not prove his defense to be entitled to removal.  See Willingham, 395 U.S. at 407.  Third, Najolia submits no evidence controverting Defendants' evidence.

Finally, perhaps the analysis would differ if a limited, identifiable set of products were at issue.  In such a case, if Najolia could demonstrate that the products that he alleges caused his injury were not the subject of specific and direct control by the Navy with respect to warnings, there would be a stronger case for a failure of the "acting under" prong as to the failure-to-warn claim.  However, Najolia makes no specific identifications.  Rather, he refers generally to categories of products to which he was exposed on board the *Uhlmann*, including "heat insulation, boiler insulation, insulation pads, pumps, gaskets, boiler lagging, boiler jackets, wellboards and other asbestos insulation on the boilers, turbines, walls, ceilings and piping systems throughout the vessels undergoing construction, maintenance or repairs . . . .".  Rec. Doc. 1-1, at 6, ¶ 34.  And

25

while Najolia cannot be faulted for his lack of ability to allege the specific products that injured him without the benefit of sufficient discovery, nor can Defendants be deprived of their federal forum for the resolution of a colorable federal defense regarding important federal interests.

The Court finds that there is sufficient proof for the purpose of removal that the Navy imposed a duty on Defendants to comply with specifications requiring the use of asbestos in Defendants' products that allegedly caused Najolia injury while he served on the *USS Uhlmann*.  Therefore, Defendants have satisfied the first prong for removal by showing that they acted under the direction of a federal officer in manufacturing the products that allegedly contributed to Najolia's mesothelioma.

2.  *Colorable Federal Defense*

Defendants invoke government contractor immunity as set forth in <u>Boyle</u>:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

<u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 512 (1988).  One

purpose of this immunity defense is to preserve the government's uniquely federal interest in the procurement of equipment; the government has an interest in the imposition of liability on its contractors because of the resultant effect on the terms of government contracts.  Dupre, 2011 WL 4551439, at *7. Importantly, in order to support removal, the defendant must only show a *colorable* defense.  "The officer need not win his case before he can have it removed."  Willingham, 395 U.S. at 407. Preceding its proposed analysis of the three-prong test, Najolia argues that there is no colorable defense because there is no significant conflict between federal policy and state law as applied to this case.  To the contrary, based on the affidavits submitted, Defendants have made an evidentiary showing of a potential conflict between state-law duties and contractual duties imposed via the Navy's control of manufacturing specifications for turbines.

For the reasons previously stated in detail, there is evidence that the government approved reasonably precise specifications within the meaning of the first prong of Boyle, in that GE and Westinghouse were required to comply with military specifications as to the composition of turbines for use on the

27

*Uhlmann*.[8]  With respect to whether there is adequate proof under

the first <u>Boyle</u> prong, of reasonably precise specifications

concerning product *warnings*, there is authority for the

proposition that even if the Navy did not expressly prohibit

asbestos warnings, a finding of a colorable defense may properly

be made.  The Fifth Circuit has stated that the government's

involvement in the decision of whether or not to give a warning

may state a government contractor defense.  <u>In re Air Disaster at

Ramstein Air Base, Germany, on 8/29/90</u>, 81 F.3d 570, 576 (5th

Cir. 1996) ("A conflict between federal policy and state law

might arise if there is evidence that the Government was involved

in the decision to give, or not to give, a warning."); <u>see also</u>

<u>Kerstetter v. Pac. Scientific Co.</u>, 210 F.3d 431, 438 (5th Cir.

2000) (where the Navy approved, changed, and edited warnings in a

flight manual, even though the manual contained no express

evaluation of a warning of the specific hazard at issue, the

government contractor defense applied because "the Navy exercised

discretion in approving warnings in the flight manual"); <u>cf.</u> <u>Tate</u>

<u>v. Boeing Helicopters</u>, 55 F.3d 1150, 1157 (6th Cir. 1995)

---

[8] For example, based on Admiral Lehman's personal knowledge obtained
while he was a ship superintendent for the Navy, he asserts that "[a]ny
deviation from military specifications of equipment to be installed on ships
would result in significant problems and rejection of the equipment."  Rec.
Doc. 40-5, at 1-2, ¶¶ 3-4.

("Government discretion is required, not dictation or prohibition of warnings. Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions, the defense displaces state law-even if the government did not 'prohibit' the contractor from proposing more alarming warnings.").  For the reasons already stated, there is certainly record evidence that the Navy exercised its discretion in the warning-creation process, so as to satisfy the first prong of <u>Boyle</u>.

As to the second prong of the <u>Boyle</u> test, it is too early to engage in an evidentiary challenge to whether the turbines conformed precisely to the Navy's specifications.  The third prong requires a showing that "the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." <u>Boyle</u>, 487 U.S. at 512.  Even if GE and Westinghouse did not warn the Navy about the dangers of asbestos, the third prong only requires that the contractor "disclose information about which it is more knowledgeable than the government." <u>Haltiwanger v. Unisys Corp.</u>, 949 F. Supp. 898, 904 (D.D.C. 1996).  Defendants have submitted evidence that the government was more knowledgeable than Defendants concerning asbestos hazards, at the time of the

pertinent conduct of turbine design and manufacture, which obviated any duty to disclose.  Dr. Betts declares that the Navy knew of asbestos hazards at least as early as the 1920s and had an active program to identify hazardous exposures.  Rec. Doc. 40-8, at 1, ¶ 1; at 4-5, ¶ 7.  Dr. Betts also asserts that the Navy's information concerning asbestos health hazards far exceeded any information that could have been provided by a turbine manufacturer in the years following World War II.  Id. at18, ¶ 27.[9]  Accordingly, Defendants have demonstrated the existence of a colorable defense based on government contractor immunity.

3.  *Causal Nexus*

The third and final prong required to invoke the federal officer removal statute is a causal nexus between the plaintiff's claims and acts the defendant performed under color of federal office.  Crocker, 852 F. Supp. at 1325.  This final prong is satisfied as to both the design-defect and failure-to-warn claims.  The design-defect claim directly arises out of the Navy's alleged instructions to Defendants to use asbestos in

---

[9] The basis for his declaration is his personal and professional knowledge and experience as a physician; his operational experiences from his Navy career; his review of historical documents; and his own experiences, research, and communications with others who worked for the Navy and the Public Health Service.  Id. at 3, ¶ 4.

turbines manufactured and designed by Defendants.  See Akin v. Big Three Indus., Inc., 851 F. Supp. 819, 823-24 (E.D. Tex. 1994) ("Plainly, when a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied.").  The failure-to-warn claim directly arises out of the Navy's alleged involvement in the process of determining what warnings could be placed upon products manufactured by Defendants for use aboard the *Uhlmann*.

If the analysis under the third prong seems terse, it is logically so.  The court in Madden v. Able Supply Co., 205 F. Supp. 2d 695, 701 (S.D. Tex. 2002) found the causal nexus test satisfied where the plaintiff's claims against Westinghouse pertained to the design, construction, and installation of marine turbines on Navy vessels and to the lack of warnings affixed to the turbines.  The turbines were constructed pursuant to stringent naval specifications, and the warnings were governed by Navy guidelines.  Id. at 701-02.  As a result, the causal nexus was "axiomatic."  Id. at 702.  The same is true in this case. Because Defendants have demonstrated (1) that they acted under the direction of a federal officer, (2) that they have a colorable federal defense, and (3) that there is a causal nexus

31

between Najolia's claims and acts Defendants performed under color of federal office, the removal was proper under Title 28 U.S.C. § 1442(a)(1). Accordingly, and for all of the foregoing reasons,

**IT IS ORDERED** that Plaintiff Frank Najolia, Jr.'s Motion to Remand (Rec. Doc. 21) is **DENIED**.

New Orleans, Louisiana, this 23rd day of May, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

32